IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CLAUDE ARTHUR VERBAL II, | ) | |
| LESLIE LOUISE BREWSTER, | ) | |
| NIKKI ANNE BREWSTER, | ) | Case No. 1:16-cv-441 |
| JENNIFER DIANE BULLOCK, | ) | |
| NNEKA AYANNA DAVIS, | ) | |
| KEITH DARNELL DILLARD, JR, | ) | |
| SAICHELLE CHARI MCNEILL, | ) | |
| TIFFANY LADEVA ROGERS, | ) | |
| TASHA RENEE SMITH, and | ) | |
| DAWN KIRBY WILLIAMS, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT FOR PERMANENT INJUNCTION**

The United States of America, at the request of the Chief Counsel of the Internal

Revenue Service, a delegate of the Secretary of the Treasury, and at the direction of the

Attorney General of the United States, brings this suit to permanently enjoin the

defendants, Claude A. Verbal II, Leslie L. Brewster, Nikki A. Brewster, Jennifer D.

Bullock, Nneka A. Davis, Keith D. Dillard, Jr., Saichelle C. McNeill, Tiffany L. Rogers,

Tasha R. Smith, and Dawn K. Williams, and all persons and entities in active concert or

participation with them, and from directly or indirectly:

> (a) Preparing or filing, or assisting in the preparation or filing of any federal tax
> return for any other person or entity;

(b) Engaging in any conduct or activity subject to penalty under 26 U.S.C. § 6701, *i.e.*, preparing or assisting others in the preparation of any tax form or other document to be used in connection with a material matter arising under the internal revenue laws and which such person knows will (if so used) result in the understatement of tax liability;

(c) Engaging in any conduct or activity subject to penalty under 26 U.S.C. § 6694 by understating taxpayers' liabilities;

(d) Engaging in any conduct or activity subject to penalty under 26 U.S.C. § 6695 by failing to exercise diligence in determining eligibility for the earned income credit; and

(e) Engaging in conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

## JURISDICTION AND VENUE

1.     Jurisdiction over this action is conferred on this Court by 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. §§ 7402(a), 7407, and 7408.

2.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the government's claims for injunctive or other equitable relief occurred within Nothing But Taxes ("NBT") branches located within this judicial district.

## PARTIES

3.     Claude A. Verbal II pled guilty in April 2014 and was later sentenced to 135 months imprisonment for to aiding and assisting in the preparation of a false tax return in violation of 26 U.S.C. § 7206(2); conspiracy to defraud the United States; health care fraud; and money laundering.  Mr. Verbal is incarcerated at the Federal Correctional Institution in Butner, North Carolina.  Prior to his incarceration, Mr. Verbal was the founder of NBT.

2

4.    Leslie Louise Brewster pled guilty in February 2013 and was later sentenced to 70 months imprisonment for aiding and abetting by giving false statements in preparation of a tax return in violation of 26 U.S.C. § 7206(2); wire fraud; and aggravated identity theft.  Ms. L. Brewster is incarcerated at the United States Penitentiary at Hazelton in Bruceton Mills, West Virginia.  Prior to her incarceration, Ms. Brewster operated out of the Burlington, North Carolina branch of NBT.

5.    Nikki Anne Brewster pled guilty in August 2013 and was sentenced to 61 months imprisonment for aiding and abetting by giving false statements in preparation of a tax return in violation of 26 U.S.C. § 7602(2); wire fraud; and aggravated identity theft.  Ms. N. Brewster is incarcerated at the United States Federal Penitentiary at the Coleman Correctional Institution in Coleman, Florida.  Prior to her incarceration, Ms. N. Brewster operated out of the Durham, North Carolina branch of NBT.

6.    Jennifer Diane Bullock pled guilty in December 2013 and was sentenced to 15 months and 1 day of imprisonment for aiding and abetting by giving false statements in preparation of a tax return in violation of 26 U.S.C. § 7602(2); wire fraud; and aggravated identity theft.  Ms. Bullock was incarcerated in a federal penitentiary until April 17, 2015.  Prior to her incarceration, Ms. Bullock operated out of the Greensboro, North Carolina branch of NBT.

7.    Nneka A. Davis pled guilty in July 2014 and was sentenced to 36 months imprisonment for aiding and abetting by giving false statements in preparation of a tax return in violation of 26 U.S. C.  § 7602(2); wire fraud; and aggravated identity theft.  Ms. Davis is housed at the Raleigh Residential Reentry Management facility in Butner,

3

North Carolina.  Prior to her incarceration, Ms. Davis operated out of the Greensboro, North Carolina branch of NBT.

8.      Keith Darnell Dillard, Jr. pled guilty in August 2014 and was later sentenced to 25 months imprisonment for aiding and abetting by giving false statements in preparation of a tax return in violation of 26 U.S. C.  § 7602(2); wire fraud; and aggravated identity theft.  Mr. Dillard is housed at the Philadelphia Residential Reentry Management facility in Philadelphia, Pennsylvania.  Prior to his incarceration, Mr. Dillard operated out of the Greensboro, North Carolina branch of NBT.

9.      Saichelle Chari McNeill pled guilty in May 2013 and was sentenced to 27 months imprisonment for aiding and abetting by giving false statements in preparation of a tax return in violation of 26 U.S.C. § 7602(2); wire fraud; and aggravated identity theft.  Ms. McNeill was incarcerated at the United States Federal Prison Camp in Alderson, West Virginia until August 26, 2015.  Prior to her incarceration, Ms. McNeill operated out of the Greensboro, North Carolina branch of NBT.

10.     Tiffany Ladeva Rogers pled guilty in March 2013 and sentenced to 48 months imprisonment for making false statements in tax returns; aiding and abetting by giving false statements in preparation of a tax return in violation of 26 U.S.C. § 7206(2); wire fraud; and aggravated identity theft.  Ms. Rogers is incarcerated at the United States Federal Prison Camp at Alderson, West Virginia.  Prior to her incarceration, Ms. Rogers operated out of the Burlington, North Carolina branch of NBT.

11.     Tasha Renee Smith pled guilty in April 2014 and was sentenced to 30 months of imprisonment for conspiracy to defraud the United States in violation of 18

U.S.C. § 371. Ms. Smith is housed at the Raleigh Residential Reentry Management facility in Butner, North Carolina. Prior to her incarceration, Ms. Smith operated out of the Greensboro, North Carolina branch of NBT.

12. Dawn Kirby Williams pled guilty in March 2013 and sentenced to approximately 36 months for aiding and abetting by giving false statements in preparation of a tax return in violation of 26 U.S.C. § 7206(2); wire fraud; and aggravated identity theft. Ms. Williams is currently housed at the Raleigh Residential Reentry Management facility in Butner, North Carolina. Prior to her incarceration, Ms. Williams operated out of the Burlington, North Carolina branch of NBT.

## ALLEGATIONS COMMON TO ALL DEFENDANTS

### Statutory Framework for Injunctions against Tax Preparers

13. Three independent statutory bases exist that authorize the Court to enjoin the defendants from participating, directly or indirectly, in tax preparation services.

14. Under 26 U.S.C. § 7407, a Court may enjoin a person from, among other things:

    a. engaging in conduct subject to penalty under 26 U.S.C. § 6694 (which penalizes a return preparer who prepares or submits a return or claim that contains a frivolous or unrealistic position, or who willfully attempts to understate a customer's tax liability on a return or claim, or who makes an understatement on a return due to reckless or intentional disregard of rules or regulations);

    b. engaging in conduct subject to penalty under 26 U.S.C. § 6695 (which penalizes a return preparer who fails to be diligent in determining eligibility for the earned income tax);

c. engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

If the return preparer's misconduct is continual or repeated, and the Court finds that a narrower injunction (*i.e.*, one prohibiting specific enumerated conduct) would not be sufficient to prevent the preparer's interference with the proper administration of the federal tax laws, the Court may enjoin the person from further acting as a return preparer.

15. Under 26 U.S.C. § 7408, the Court is authorized to enjoin persons who have engaged in conduct subject to penalty under 26 U.S.C. § 6701 from further engaging in such conduct. Section 6701 imposes a penalty on any person who aids in the preparation of any portion of a return or other document, who knows the portion or document will be used in connection with any material matter under the internal revenue laws, and who knows the portion or document (if so used) would result in understating another person's tax liability.

16. Under 26 U.S.C. § 7402(a), this Court is authorized to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws." The remedies available to the United States under § 7402(a) "are in addition to and not exclusive of any and all other remedies of the United States in such courts . . ." 26 U.S.C. § 7402(a).

### The "Nothing But Taxes" Scheme

17. Mr. Verbal was the founder and operator of NBT, a statewide tax return preparation business which began operations circa January 2006 and continued through

6

at least the spring of 2012.  NBT was a trade name ("doing business as") of Beyond Infinity, Inc., a corporation that Mr. Verbal established prior to opening Nothing But Taxes.

18.     NBT had ten branches statewide: two in Durham and one each in Greensboro, Charlotte, Burlington, Raleigh, Spring Hope, Goldsboro, High Point, and Rocky Mount.  Unlike other locations, the Rocky Mount shop operated under the name P&A Tax Services, but was organized under the Beyond Infinity Corporate umbrella, shared a common fee structure and common banking with the other NBT Shops, and employed the same business practices.  Each NBT office had a manager and several return preparers.

19.     In addition to preparing returns for their customers, Mr. Verbal, his branch managers, and his line employees offered customers "the hookup," which was a promise of a dramatically larger refund in exchange for cash payments made to Mr. Verbal or the tax preparer.  These payments were over and above the flat return preparation fee that NBT charged every customer, whether or not their return was falsified.  Virtually all of the tax returns that NBT prepared resulted in a refund to the customer, many or most of which were improperly procured.

20.     The most common types of falsifications at NBT were false dependents, false Schedule C businesses, false tip income, false Earned Income Tax Credits, and false education credits.  For example, the false Schedule C businesses created by Mr. Verbal and his employees were often used to report non-existent income to the IRS on behalf of NBT's lowest-income customers.  This benefitted the customers because it increased

7

their Earned Income Tax Credit. Reporting non-existent tip income had the same effect and was used for the same purpose.

21.     NBT also used false dependents on tax returns to improperly inflate customers' refunds, both because the customers could thereby claim an extra exemption and, in most cases, an extra dependent also increased the Earned Income Tax Credit. NBT return preparers charged customers an extra cash payment, over and above the flat fee that NBT charged for all return preparation, for the preparation of a return that contained a false dependent. To facilitate this fraud, Mr. Verbal solicited and obtained the identities (*i.e.,* names, dates of birth, and Social Security Numbers) of individuals from the community for use as false dependents on customers' tax returns.

22.     NBT employees routinely escorted customers to banks and check-cashing businesses to cash their refund checks to ensure that any cash payments to the return preparers for "the hookup" were promptly paid.

23.     NBT employees prepared approximately 3080 returns from 2007 through 2010 (the 2006 through 2009 filing seasons). Beginning in 2010, the number of returns prepared by the defendants were curtailed when the IRS Criminal Investigation Division began interviewing NBT clients and employees. Despite the criminal investigation, NBT, through its employees and management, continued to file false returns through 2012 (the 2011 filing season) until the indictments of NBT employees resulted in a cessation of the return preparation activities.

24.     Following their convictions, the defendants were ordered to make restitution in the combined amount of $5,123,648.

## DEFENDANT CLAUDE A. VERBAL II

25. The United States incorporates by reference the allegations made in paragraphs 1 through 24, above, as if fully set forth herein.

26. In or about January 2006, Mr. Verbal opened NBT's first location on Fayetteville Street in Durham. From the inception of his business, Mr. Verbal instructed his return preparers and managers on how to file false tax returns in order to create improper refunds for his customers.

27. In addition to owning and operating NBT, Mr. Verbal was an income tax return preparer within the meaning of 26 U.S.C. § 7701(a)(36). As a direct result of Mr. Verbal's willful and pervasive false return preparation, his customers have filed federal income tax returns that understate their federal income tax liabilities and claim income tax refunds to which they were not entitled. In his plea agreement in his criminal case, Mr. Verbal admitted participation in this scheme and was required to make restitution of $4,078,544.

28. Through NBT, a Preparer Tax Identification Number ("PTIN") assigned to Mr. Verbal prepared approximately 307 returns for the 2007 through 2011 tax years (the 2006 through 2010 filing seasons).

29. For example, on or about January 5, 2007, Mr. Verbal prepared a 2006 federal income tax return for an NBT customer. The return that Mr. Verbal prepared reported that the customer had a Schedule C business loss of $20,049, and a dependent. Mr. Verbal knew that both of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

9

30.     Similarly, on or about January 9, 2007, Mr. Verbal assisted in the preparation of a false 2006 tax return for an NBT customer.  The return that Mr. Verbal helped prepare reported that the customer was entitled to claim education expenses of $1,250 and a business loss of $10,825.  Mr. Verbal knew that both of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

31.     Similarly, on or about January 29, 2007, Mr. Verbal assisted in the preparation of a false 2006 tax return for an NBT customer.  The return that Mr. Verbal helped prepare reported that the customer was entitled to claim business income of $11,639.  Mr. Verbal knew that this representation was completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

32.     Mr. Verbal took steps to prevent the United States and North Carolina authorities from discovering the extent of NBT's fraud.  For example, when training his office managers, Mr. Verbal passed out a set of operating procedures for NBT.  These procedures advised managers to be on the lookout for IRS agents attempting to infiltrate or gather evidence against NBT.

33.     In or about December 2007, Mr. Verbal held a staff meeting for NBT's managers and return preparers.  During that meeting, Mr. Verbal notified NBT's managers and return preparers that NBT had attracted scrutiny from the North Carolina Department of Revenue for reporting excessive Schedule C losses.  Mr. Verbal directed the managers and return preparers that, going forward, tax returns should not claim fictitious Schedule C losses in excess of $5,000.

34. In or about December 2009, Mr. Verbal held another staff meeting for NBT's managers and return preparers. During that meeting, Mr. Verbal directed NBT's employees to stop using Schedule C losses to inflate refunds for customers in response to increased scrutiny from the North Carolina Department of Revenue. Mr. Verbal directed his employees to start using other false items, such as fictitious IRA contributions, instead.

35. In 2010, an NBT employee, Tarsha Wright, told her federal probation officer that NBT had prepared false income tax returns. On November 4, 2010, the probation officer confronted Mr. Verbal about Ms. Wright's allegations, including the practice of purchasing and selling the identifying information of homeless people for use as false dependents on tax returns. On information and belief, Mr. Verbal falsely denied knowledge and subsequently transferred the Electronic Filing Identification Number ("EFIN") of the NBT branch where Ms. Wright worked to another person's name.

36. Mr. Verbal prepared tax returns and other documents for customers and assisted others in the preparation of tax returns that were intended to be used (and were used) in connection with material matters arising under the internal revenue laws.

37. Because Mr. Verbal knew that these returns and other documents would result in understatements of his customers' tax liabilities, he engaged in conduct subject to penalty under 26 U.S.C. § 6701.

38. Mr. Verbal therefore should be permanently enjoined under 26 U.S.C. § 7408 from engaging in conduct subject to penalty under 26 U.S.C. § 6701.

11

39.     Mr. Verbal has continually and repeatedly prepared and submitted, or assisted others in the preparation and submission, of federal tax returns that contain unrealistic and frivolous positions, and that willfully understated his customers' correct tax liabilities, and has thus engaged in conduct subject to penalty under 26 U.S.C. § 6694.

40.     Mr. Verbal has continually and repeatedly failed to exercise diligence in determining his customers' eligibility for the earned income credit, thereby subjecting him to penalty under 26 U.S.C. § 6695(g).

41.     Mr. Verbal has continually and repeatedly engaged in other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

42.     Accordingly, Mr. Verbal should be permanently enjoined from acting as a tax return preparer under 26 U.S.C. § 7407.

43.     Mr. Verbal has engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws, and is likely to continue to engage in such conduct unless he is enjoined.  He continued to prepare and file false tax returns (or instruct others to do the same) that contained fabricated and unsubstantiated deductions and expenses even after he became aware that he was under investigation for preparing such returns.  Mr. Verbal also instructed his employees to take actions specifically designed to frustrate or evade state and federal authorities that were investigating his tax preparation businesses.

12

44. Recurrence of similar wrongful conduct is probable given Mr. Verbal's prior willfulness, the recurrent nature of his conduct over a period of years, and the absence of any assurances that he will not commit future violations if he were to return to the tax preparation business.

45. A permanent injunction under 26 U.S.C. § 7402(a) is necessary and appropriate because if Mr. Verbal is not enjoined, the United States will likely suffer irreparable injury by erroneously providing tax refunds to persons who are not entitled to receive them, and by taxpayers who are not reporting and paying the correct amount of taxes as a result of Verbal's actions as a tax return preparer and owner of a tax preparation business.

46. Unless Mr. Verbal is enjoined, the IRS will have to devote substantial time and resources to identifying and locating his customers, and then examine his customers' tax returns and liabilities. Pursuing all of Mr. Verbal's customers may be impossible given the IRS's limited resources.

47. Permanently enjoining Mr. Verbal from acting as a federal income tax return preparer is in the public interest because a permanent injunction will prevent his illegal conduct and the harm it causes the United States.

### DEFENDANT LESLIE LOUISE BREWSTER

48. The United States incorporates by reference the allegations made in paragraphs 1 through 47, above, as if fully set forth herein.

49. Ms. L. Brewster was an income tax return preparer within the meaning of 26 U.S.C. § 7701(a)(36), and has prepared other people's tax returns for compensation.

13

50. Ms. L. Brewster was initially hired by Mr. Verbal in early 2006 to recruit potential NBT customers. In November 2006, however, Ms. L. Brewster was hired as a tax return preparer. In November 2007, Ms. Brewster was promoted to manager of the Burlington Branch of NBT.

51. As a return preparer and manager, Ms. L. Brewster prepared hundreds of false tax returns for numerous NBT customers. These tax returns claimed larger tax refunds for the NBT customers than the customers were entitled to receive by reporting false deductions, false exemptions, and false credits to which the customers were not entitled.

52. As a direct result of Ms. L. Brewster's willful and pervasive return preparation scheme, her customers have filed federal income tax returns that understate their federal income tax liabilities and claim income tax refunds to which they were not entitled.

53. When her clients received their federal income tax refund, Ms. L. Brewster claimed large fees from the NBT customers, thus directly benefitting from and sharing in the moneys wrongly obtained from the government.

54. In her plea agreement in her criminal case, Ms. Brewster admitted participation in this scheme and was required to make restitution of $92,910.

55. Through NBT, the PTIN assigned to Ms. L. Brewster was used to prepare approximately 465 returns for the 2008 through 2011 tax years (the 2007 through 2010 filing seasons).

14

56. For example, on or about January 19, 2009, Ms. L. Brewster willfully assisted in preparing a 2008 income tax return for an NBT customer. The return that Ms. L. Brewster helped prepare reported that the customer was entitled to claim a tax credit based on educational expenses of $2,400 for the customer and $2,400 for a dependent. Ms. L. Brewster knew that both of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

57. Similarly, on or about January 25, 2010, Ms. L. Brewster willfully assisted in preparing a 2009 income tax return for an NBT customer. The return that Ms. Brewster helped prepare reported that the customer was entitled to claim exemptions for two dependents. Ms. L. Brewster knew that these claims were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

58. Similarly, on or about on or about January 22, 2009, Ms. L. Brewster willfully assisted in preparing a 2008 income tax return for an NBT customer. The return that Ms. L. Brewster helped prepare reported that the customer was entitled to claim an Earned Income Tax Credit based in part on W-2 income of $10,417, and to claim an exemption for a dependent. Ms. L. Brewster knew that both of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

59. Similarly, on or about January 23, 2009, Ms. L. Brewster willfully assisted in preparing a 2008 income tax return for an NBT customer. The return that Ms. L. Brewster helped prepare reported that the customer was entitled to claim deductions for a business loss of $17,350, gifts to charity of $6,055, job expenses of $12,797, credits

15

for non-taxable fuel use of $10,248, and to claim an exemption for a dependent. Ms. L. Brewster knew that all of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

60. Similarly, on or about January 18, 2011, Ms. L. Brewster willfully assisted in preparing a 2010 income tax return for an NBT customer. The return that Ms. L. Brewster helped prepare reported that the customer was entitled to claim an Earned Income Tax Credit based in part on tips received of $7,171, and to claim a tax credit based on educational expenses of $4,000. Ms. L. Brewster knew that both of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

61. Ms. L. Brewster prepared tax returns and other documents for customers that were intended to be used (and were used) in connection with material matters arising under the internal revenue laws.

62. Because Ms. L. Brewster knew that these returns and other documents would result in understatements of her customers' tax liabilities, she engaged in conduct subject to penalty under 26 U.S.C. § 6701.

63. Ms. L. Brewster therefore should be permanently enjoined under 26 U.S.C. § 7408 from engaging in conduct subject to penalty under 26 U.S.C. § 6701.

64. Ms. L. Brewster has continually and repeatedly prepared and submitted federal tax returns that contain unrealistic and frivolous positions, and that willfully attempted to understate his customers' correct tax liabilities, and has thus engaged in conduct subject to penalty under 26 U.S.C. § 6694.

16

65.     Ms. L. Brewster has continually and repeatedly failed to exercise diligence in determining her customers' eligibility for the earned income credit, thereby subjecting her to penalty under 26 U.S.C. § 6695(g).

66.     Accordingly, Ms. L. Brewster should be permanently enjoined from acting as a tax return preparer under 26 U.S.C. § 7407.

67.     Ms. L. Brewster has engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws, and is likely to continue to engage in such conduct unless she is enjoined.  On information and belief, she continued to prepare and file false tax returns that contain fabricated and unsubstantiated deductions and expenses even after he became aware that NBT was under investigation for preparing such returns.

68.     Recurrence of similar wrongful conduct is probable given the substantial financial harm already caused by Ms. L. Brewster; Ms. L. Brewster's prior willfulness, the recurrent nature of her conduct over a period of years, and the absence of any assurances that she will not commit future violations if she were to return to the tax return preparation business.

69.     A permanent injunction under 26 U.S.C. § 7402(a) is necessary and appropriate because if Ms. L. Brewster is not enjoined, the United States will likely suffer irreparable injury by erroneously providing tax refunds to persons who are not entitled to receive them, and by taxpayers who are not reporting and paying the correct amount of taxes as a result of Ms. L. Brewster's actions as a tax return preparer and manager of a tax preparation business.

17

70.     Unless Ms. L. Brewster is enjoined, the IRS will have to devote substantial time and resources to identifying and locating her customers, and then examine her customers' tax returns and liabilities. Pursuing all of Ms. L. Brewster's customers may be impossible given the IRS's limited resources.

71.     Permanently enjoining Ms. L. Brewster from acting as a federal income tax return preparer is in the public interest because a permanent injunction will stop her illegal conduct and the harm it causes the United States.

### DEFENDANT NIKKI ANNE BREWSTER

72.     The United States incorporates by reference the allegations made in paragraphs 1 through 71, above, as if fully set forth herein.

73.     Ms. N. Brewster was an income tax return preparer within the meaning of 26 U.S.C. § 7701(a)(36), and has prepared other people's tax returns for compensation.

74.     Ms. N. Brewster was employed by NBT as a return preparer from 2008 through 2012. After only one filing season, Ms. N. Brewster was promoted to manager of the Durham Branch of NBT.

75.     As a return preparer and manager, Ms. N. Brewster prepared hundreds of false tax returns for numerous NBT customers. These tax returns claimed larger tax refunds for the NBT customers than the customers were entitled to, by reporting false deductions, false exemptions, and false credits to which the customers were not entitled.

76.     As a direct result of Ms. N. Brewster's willful and pervasive return preparation scheme, her customers have filed federal income tax returns that understate

their federal income tax liabilities and claim income tax refunds to which they were not entitled. In her plea agreement in her criminal case, Ms. N. Brewster admitted participation in this scheme and was required to make restitution of $79,519.

77.     Upon receipt of the inflated refund, Ms. N. Brewster claimed larges fee from the NBT customers, thus directly benefitting from and sharing in the moneys wrongfully obtained from the government.

78.     Through NBT, the PTIN assigned to Ms. N. Brewster was used to prepare approximately 157 returns for the 2009 through 2012 tax years (the 2008 through 2011 filing seasons).

79.     For example, on or about February 8, 2011, Ms. Brewster willfully assisted in preparing a 2010 income tax return for an NBT customer.  The return that Ms. Brewster helped prepare reported that the customer was entitled to claim a tax credit based on educational expenses of $3,015, and claimed an exemption for a dependent. Ms. Brewster knew that both of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

80.     Similarly, Ms. N. Brewster willfully assisted in preparing a 2010 income tax return for an NBT customer.  The return that Ms. N. Brewster helped prepare reported that the customer earned self-employment income in the amount of $11,175 and the customer was entitled to claim a fuel tax credit in the amount of $540.  Ms. N. Brewster knew that both of these claims were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

19

81.     Similarly, Ms. N. Brewster willfully assisted in preparing a 2010 income tax return for an NBT customer.  The return that Ms. N. Brewster helped prepare reported that the customer was entitled to claim exemptions for three dependents, that the customer earned self-employment income in the amount of $13,191, and the customer was entitled to claim a fuel tax credit in the amount of $540.  Ms. N. Brewster knew that all of these claims were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

82.     The United States incorporates by reference the allegations made in paragraphs 1 through 161, above, as if fully set forth herein.

83.     Ms. N. Brewster prepared tax returns and other documents for customers that were intended to be used (and were used) in connection with material matters arising under the internal revenue laws.

84.     Because Ms. N. Brewster knew that these returns and other documents would result in understatements of her customers' tax liabilities, she engaged in conduct subject to penalty under 26 U.S.C. § 6701.

85.     Ms. N. Brewster therefore should be permanently enjoined under 26 U.S.C. § 7408 from engaging in conduct subject to penalty under 26 U.S.C. § 6701.

86.     Ms. N. Brewster has continually and repeatedly prepared and submitted federal tax returns that contain unrealistic and frivolous positions, and that willfully attempted to understate his customers' correct tax liabilities, and has thus engaged in conduct subject to penalty under 26 U.S.C. § 6694.

20

87.     Ms. N. Brewster has continually and repeatedly failed to exercise diligence in determining her customers' eligibility for the earned income credit, thereby subjecting her to penalty under 26 U.S.C. § 6695(g).

88.     Accordingly, Ms. N. Brewster should be permanently enjoined from acting as a tax return preparer under 26 U.S.C. § 7407.

89.     Ms. N. Brewster has engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws, and is likely to continue to engage in such conduct unless she is enjoined.  On information and belief, she continued to prepare and file false tax returns that contain fabricated and unsubstantiated deductions and expenses even after he became aware that NBT was under investigation for preparing such returns.

90.     Recurrence of similar wrongful conduct is probable given the substantial financial harm already caused by Mr. Brewster; Mr. Brewster's prior willfulness, the recurrent nature of her conduct over a period of years, and the absence of any assurances that she will not commit future violations if she were to return to the tax return preparation business.

91.     A permanent injunction under 26 U.S.C. § 7402(a) is necessary and appropriate because if Ms. N. Brewster is not enjoined, the United States will likely suffer irreparable injury by erroneously providing tax refunds to persons who are not entitled to receive them, and by taxpayers who are not reporting and paying the correct amount of taxes as a result of Ms. N. Brewster's actions as a tax return preparer and manager of a tax preparation business.

21

92. Unless Ms. N. Brewster is enjoined, the IRS will have to devote substantial time and resources to identifying and locating her customers, and then examine her customers' tax returns and liabilities. Pursuing all of Ms. N. Brewster's customers may be impossible given the IRS's limited resources.

93. Permanently enjoining Ms. N. Brewster from acting as a federal income tax return preparer is in the public interest because a permanent injunction will stop her illegal conduct and the harm it causes the United States.

## DEFENDANT JENNIFER DIANE BULLOCK

94. The United States incorporates by reference the allegations made in paragraphs 1 through 93, above, as if fully set forth herein.

95. Ms. Bullock was an income tax return preparer within the meaning of 26 U.S.C. § 7701(a)(36), and has prepared other people's tax returns for compensation.

96. Ms. Bullock was employed by NBT as a tax return preparer from 2009 through 2011.

97. As a return preparer Ms. Bullock prepared false tax returns for numerous NBT customers. These tax returns claimed larger tax refunds for the NBT customers than the customers were entitled to by reporting, among other things, false deductions to which the customers were not entitled.

98. Upon receipt of the inflated refund, Ms. Bullocks claimed large fees from the NBT customers, thus directly benefitting from and sharing in the moneys wrongfully obtained from the government.

22

99.     As a direct result of Ms. Bullock's willful and pervasive return preparation scheme, her customers have filed federal income tax returns that understate their federal income tax liabilities and claim income tax refunds to which they were not entitled.  In her plea agreement in her criminal case, Ms. Bullock admitted participation in this scheme and was required to make restitution of $38,100.

100.    Through NBT, the PTIN assigned to Ms. Bullock used to prepare approximately 302 returns for the 2009 through 2011 tax years (the 2008 through 2010 filing seasons).

101.    For example, on or about March 3, 2010, Ms. Bullock willfully assisted in preparing a 2009 income tax return for an NBT customer.  The return that Ms. Bullock helped prepare reported that the customer was entitled to claim an exemption for a dependent for the purposes of an extra exemption and for the purpose of the qualifying to claim the Earned Income Tax Credit.  Ms. Bullock knew that both of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

102.    Ms. Bullock prepared tax returns and other documents for customers that were intended to be used (and were used) in connection with material matters arising under the internal revenue laws.

103.    Because Ms. Bullock knew that these returns and other documents would result in understatements of his customers' tax liabilities, she engaged in conduct subject to penalty under 26 U.S.C. § 6701.

104.    Ms. Bullock therefore should be permanently enjoined under 26 U.S.C. § 7408 from engaging in conduct subject to penalty under 26 U.S.C. § 6701.

23

105. Ms. Bullock has continually and repeatedly prepared and submitted federal tax returns that contain unrealistic and frivolous positions, and that willfully attempted to understate her customers' correct tax liabilities, and has thus engaged in conduct subject to penalty under 26 U.S.C. § 6694.

106. Ms. Bullock has continually and repeatedly failed to exercise diligence in determining her customers' eligibility for the earned income credit, thereby subjecting her to penalty under 26 U.S.C. § 6695(g).

107. Accordingly, Ms. Bullock should be permanently enjoined from acting as a tax return preparer under 26 U.S.C. § 7407.

108. Mr. Bullock has engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws, and is likely to continue to engage in such conduct unless she is enjoined. On information and belief, she continued to prepare and file false tax returns that contain fabricated and unsubstantiated deductions and expenses even after she became aware that NBT was under investigation for preparing such returns.

109. Recurrence of similar wrongful conduct is probable given the substantial financial harm already caused by Ms. Bullock; Ms. Bullock's prior willfulness, the recurrent nature of her conduct over a period of years, and the absence of any assurances that she will not commit future violations if she were to return to the tax return preparation business.

110. A permanent injunction under 26 U.S.C. § 7402(a) is necessary and appropriate because if Ms. Bullock is not enjoined, the United States will likely suffer

24

irreparable injury by erroneously providing tax refunds to persons who are not entitled to receive them, and by taxpayers who are not reporting and paying the correct amount of taxes as a result of Ms. Bullock's actions as a tax return preparer and manager of a tax preparation business.

111.    Unless Ms. Bullock is enjoined, the IRS will have to devote substantial time and resources to identifying and locating her customers, and then examine her customers' tax returns and liabilities. Pursuing all of Ms. Bullock's customers may be impossible given the IRS's limited resources.

112.    Permanently enjoining Ms. Bullock from acting as a federal income tax return preparer is in the public interest because a permanent injunction will stop her illegal conduct and the harm it causes the United States.

## DEFENDANT NNEKA AYANNA DAVIS

113.    The United States incorporates by reference the allegations made in paragraphs 1 through 112, above, as if fully set forth herein.

114.    Ms. Davis was an income tax return preparer within the meaning of 26 U.S.C. § 7701(a)(36), and has prepared other people's tax returns for compensation.

115.    Ms. Dillard was employed as a return preparer by NBT from 2009 through 2011.

116.    As a return preparer, Ms. Davis prepared dozens of false tax returns for NBT customers. These tax returns claimed larger tax refunds for the NBT customers than the customers were entitled to by reporting, among other things, false dependents,

25

false deductions, false exemptions, and false credits to which the customers were not entitled.

117.    Upon receipt of the inflated refund, Ms. Davis claimed a large fee from the NBT customers, thus directly benefitting from and sharing in the moneys wrongly obtained from the government.

118.    As a direct result of Ms. Davis's willful and pervasive return preparation scheme, her customers have filed federal income tax returns that understate their federal income tax liabilities and claim income tax refunds to which they were not entitled.  In her plea agreement in her criminal case, Ms. Davis admitted participation in this scheme and was required to make restitution of $123,313.

119.    Through NBT, the PTIN assigned to Ms. Davis was used to prepare approximately 324 returns for the 2008 through 2011 tax years (the 2007 through 2010 filing seasons).

120.    For example, on or about January 26, 2010, Ms. Davis willfully assisted in preparing a 2009 income tax return for an NBT customer.  The return that Ms. Davis helped prepare reported that the customer was entitled to claim an exemption for a dependent.  Ms. Davis knew that both of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

121.    Similarly, on or about February 27, 2009, Ms. Davis willfully assisted in preparing a 2008 income tax return for an NBT customer.  The return that Ms. Davis helped prepare reported that the customer earned wages in the amount of $8,124.  Ms.

Davis knew this claim was completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

122.    Similarly, on or about on or about January 19, 2010, Ms. Davis willfully assisted in preparing a 2009 income tax return for an NBT customer.  The return that Ms. Davis helped prepare reported that the customer had unreported tip income in the amount of $4,320.  Ms. Davis knew that this item was completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

123.    Similarly, on or about January 18, 2011, Ms. Davis willfully assisted in preparing a 2010 income tax return for an NBT customer.  The return that Ms. Davis helped prepare reported that the customer was entitled to claim a credit for qualified education expenses in the amount of $1,500, and the customer was entitled to deduct an IRA contribution in the amount of $1,000.  Ms. Davis knew that both of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

124.    Similarly, on or about January 24, 2011, Ms. Davis willfully assisted in preparing a 2010 income tax return for an NBT customer.  The return that Ms. Davis helped prepare reported that the customer earned unreported tip income in the amount of $3,998 and that the customer was entitled to claim a credit for qualified education expenses in the amount of $1,225.  Ms. Davis knew that both of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

125.    Ms. Davis prepared tax returns and other documents for customers that were intended to be used (and were used) in connection with material matters arising under the internal revenue laws.

27

126. Because Ms. Davis knew that these returns and other documents would result in understatements of her customers' tax liabilities, she engaged in conduct subject to penalty under 26 U.S.C. § 6701.

127. Ms. Davis therefore should be permanently enjoined under 26 U.S.C. § 7408 from engaging in conduct subject to penalty under 26 U.S.C. § 6701.

128. Ms. Davis has continually and repeatedly prepared and submitted federal tax returns that contain unrealistic and frivolous positions, and that willfully attempted to understate her customers' correct tax liabilities, and has thus engaged in conduct subject to penalty under 26 U.S.C. § 6694.

129. Ms. Davis has continually and repeatedly failed to exercise diligence in determining her customers' eligibility for the earned income credit, thereby subjecting her to penalty under 26 U.S.C. § 6695(g).

130. Accordingly, Ms. Davis should be permanently enjoined from acting as a tax return preparer under 26 U.S.C. § 7407.

131. Ms. Davis has engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws, and is likely to continue to engage in such conduct unless she is enjoined. On information and belief, she continued to prepare and file false tax returns that contain fabricated and unsubstantiated deductions and expenses even after she became aware that NBT was under investigation for preparing such returns.

132. Recurrence of similar wrongful conduct is probable given the substantial financial harm already caused by Ms. Davis; Ms. Davis's prior willfulness, the recurrent

28

nature of her conduct over a period of years, and the absence of any assurances that she will not commit future violations if she were to return to the tax return preparation business.

133.     A permanent injunction under 26 U.S.C. § 7402(a) is necessary and appropriate because if Ms. Davis is not enjoined, the United States will likely suffer irreparable injury by erroneously providing tax refunds to persons who are not entitled to receive them, and by taxpayers who are not reporting and paying the correct amount of taxes as a result of Ms. Davis's actions as a tax return preparer of a tax preparation business.

134.     Unless Ms. Davis is enjoined, the IRS will have to devote substantial time and resources to identifying and locating her customers, and then examine her customers' tax returns and liabilities.  Pursuing all of Ms. Davis's customers may be impossible given the IRS's limited resources.

135.     Permanently enjoining Ms. Davis from acting as a federal income tax return preparer is in the public interest because a permanent injunction will stop her illegal conduct and the harm it causes the United States.

### DEFENDANT KEITH DARNELL DILLARD, JR.

136.     The United States incorporates by reference the allegations made in paragraphs 1 through 135, above, as if fully set forth herein.

137.     Mr. Dillard was an income tax return preparer within the meaning of 26 U.S.C. § 7701(a)(36), and has prepared other people's tax returns for compensation.

29

138.     Mr. Dillard was employed as a return preparer by NBT from 2010 through 2011.

139.     As a return preparer, Mr. Dillard prepared dozens of false tax returns for NBT customers.  These tax returns claimed larger tax refunds for the NBT customers than the customers were entitled to by reporting, among other things, false dependents, false deductions, false exemptions, and false credits to which the customers were not entitled.

140.     Upon receipt of the inflated refund, Mr. Dillard claimed large fees from the NBT customers, thus directly benefitting from and sharing in the moneys wrongly obtained from the government.

141.     As a direct result of Mr. Dillard's willful and pervasive improper return preparation, his customers have filed federal income tax returns that understate their federal income tax liabilities and claim income tax refunds to which they were not entitled.  In his plea agreement in his criminal case, Mr. Dillard admitted participation in this scheme and was required to make restitution of $29,238.

142.     Through NBT, the PTIN assigned to Mr. Dillard was used to prepare approximately 83 returns for the 2010 through 2012 tax years (the 2009 through 2011 filing seasons).

143.     For example, on or about February 22, 2010, Mr. Dillard willfully assisted in preparing a 2009 income tax return for an NBT customer.  The return that Mr. Dillard helped prepare reported that the customer was entitled to claim exemptions for a dependent, and that that the customer had unreported tip income in the amount of

30

$4,121.00. Mr. Dillard knew that both of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

144. Similarly, on or about March 1, 2010, Mr. Dillard willfully assisted in preparing a 2009 income tax return for an NBT customer. The return that Mr. Dillard helped prepare reported that the customer was entitled to claim an exemption for two dependents, and was entitled to claim a qualified education expense credit in the amount of $1,560.00. Mr. Dillard knew that both of these claims were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

145. Similarly, on or about on or about January 22, 2011, Mr. Dillard willfully assisted in preparing a 2010 income tax return for an NBT customer. The return that Mr. Dillard helped prepare reported that the customer was entitled to claim an exemption for a dependent, that the customer had unreported tip income in the amount of $1,750.00, that the customer was entitled to claim a qualified education expense credit in the amount of $1,800.00. Mr. Dillard knew that these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

146. Similarly, on or about January 26, 2011, Mr. Dillard willfully assisted in preparing a 2010 income tax return for an NBT customer. The return that Mr. Dillard helped prepare reported that the customer was entitled to claim an exemption for a dependent, and that the customer had unreported tip income in the amount of $2,940.00. Mr. Dillard knew that both of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

147.     Similarly, on or about February 4, 2011, Mr. Dillard willfully assisted in preparing a 2010 income tax return for an NBT customer.  The return that Mr. Dillard helped prepare reported that the customer was entitled to claim an exemption for a dependent, and was entitled to claim a credit for qualified education expenses in the amount of $2,350.00.  Mr. Dillard knew that both of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

148.     Mr. Dillard prepared tax returns and other documents for customers that were intended to be used (and were used) in connection with material matters arising under the internal revenue laws.

149.     Because Mr. Dillard knew that these returns and other documents would result in understatements of his customers' tax liabilities, he engaged in conduct subject to penalty under 26 U.S.C. § 6701.

150.     Mr. Dillard therefore should be permanently enjoined under 26 U.S.C. § 7408 from engaging in conduct subject to penalty under 26 U.S.C. § 6701.

151.     Mr. Dillard has continually and repeatedly prepared and submitted federal tax returns that contain unrealistic and frivolous positions, and that willfully attempted to understate his customers' correct tax liabilities, and has thus engaged in conduct subject to penalty under 26 U.S.C. § 6694.

152.     Mr. Dillard has continually and repeatedly failed to exercise diligence in determining his customers' eligibility for the earned income credit, thereby subjecting him to penalty under 26 U.S.C. § 6695(g).

153. Accordingly, Mr. Dillard should be permanently enjoined from acting as a tax return preparer under 26 U.S.C. § 7407.

154. Mr. Dillard has engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws, and is likely to continue to engage in such conduct unless he is enjoined. On information and belief, he continued to prepare and file false tax returns that contain fabricated and unsubstantiated deductions and expenses even after he became aware that NBT was under investigation for preparing such returns.

155. Recurrence of similar wrongful conduct is probable given the substantial financial harm already caused by Mr. Dillard; Mr. Dillard's prior willfulness, the recurrent nature of his conduct over a period of years, and the absence of any assurances that he will not commit future violations if he were to return to the tax return preparation business.

156. A permanent injunction under 26 U.S.C. § 7402(a) is necessary and appropriate because if Mr. Dillard is not enjoined, the United States will likely suffer irreparable injury by erroneously providing tax refunds to persons who are not entitled to receive them, and by taxpayers who are not reporting and paying the correct amount of taxes as a result of Mr. Dillard's actions as a tax return preparer and manager of a tax preparation business.

157. Unless Mr. Dillard is enjoined, the IRS will have to devote substantial time and resources to identifying and locating his customers, and then examine his

33

customers' tax returns and liabilities. Pursuing all of Mr. Dillard's customers may be impossible given the IRS's limited resources.

158. Permanently enjoining Mr. Dillard from acting as a federal income tax return preparer is in the public interest because a permanent injunction will stop his illegal conduct and the harm it causes the United States.

### DEFENDANT SAICHELLE CHARI MCNEILL

159. The United States incorporates by reference the allegations made in paragraphs 1 through 158, above, as if fully set forth herein.

160. Ms. McNeill was an income tax return preparer within the meaning of 26 U.S.C. § 7701(a)(36), and has prepared other people's tax returns for compensation.

161. Ms. McNeill was employed by NBT as a tax return preparer and as a manager from 2008 through 2010.

162. As a return preparer and manager, Ms. McNeill prepared false tax returns for numerous NBT customers. These tax returns claimed larger tax refunds for the NBT customers than the customers were entitled to by reporting, among other things, false deductions, false exemptions, and false credits to which the customers were not entitled.

163. Upon receipt of the inflated refund, Ms. McNeill claimed large fees from the NBT customers, thus directly benefitting from and sharing in the moneys improperly obtained from the government.

164. As a direct result of Ms. McNeill's willful and pervasive return preparation scheme, her customers have filed federal income tax returns that understate

34

their federal income tax liabilities and claim income tax refunds to which they were not entitled. In her plea agreement in her criminal case, Ms. McNeill admitted participation in this scheme and was required to make restitution of $56,998.

165.    Through NBT, the PTIN assigned to Ms. McNeill was used to prepare approximately 174 returns for the 2009 through 2011 tax years (the 2008 through 2010 filing seasons).

166.    For example, on or about February 1, 2010, Ms. McNeill willfully assisted in preparing a 2009 income tax return for an NBT customer. The return that Ms. McNeill helped prepare reported that the customer was entitled to claim an IRA deduction of $2,500.00, to claim a tax credit based on educational expenses of $3,500.00, and to claim an exemption for a dependent. Ms. McNeill knew that these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

167.    Ms. McNeill prepared tax returns and other documents for customers that were intended to be used (and were used) in connection with material matters arising under the internal revenue laws.

168.    Because Ms. McNeill knew that these returns and other documents would result in understatements of his customers' tax liabilities, she engaged in conduct subject to penalty under 26 U.S.C. § 6701.

169.    Ms. McNeill therefore should be permanently enjoined under 26 U.S.C. § 7408 from engaging in conduct subject to penalty under 26 U.S.C. § 6701.

170.    Ms. McNeill has continually and repeatedly prepared and submitted federal tax returns that contain unrealistic and frivolous positions, and that willfully

35

attempted to understate her customers' correct tax liabilities, and has thus engaged in conduct subject to penalty under 26 U.S.C. § 6694.

171.    Ms. McNeill has continually and repeatedly failed to exercise diligence in determining her customers' eligibility for the earned income credit, thereby subjecting her to penalty under 26 U.S.C. § 6695(g).

172.    Accordingly, Ms. McNeill should be permanently enjoined from acting as a tax return preparer under 26 U.S.C. § 7407.

173.    Mr. McNeill has engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws, and is likely to continue to engage in such conduct unless she is enjoined.  On information and belief, she continued to prepare and file false tax returns that contain fabricated and unsubstantiated deductions and expenses even after she became aware that NBT was under investigation for preparing such returns.

174.    Recurrence of similar wrongful conduct is probable given the substantial financial harm already caused by Ms. McNeill; Ms. McNeill's prior willfulness, the recurrent nature of her conduct over a period of years, and the absence of any assurances that she will not commit future violations if she were to return to the tax return preparation business.

175.    A permanent injunction under 26 U.S.C. § 7402(a) is necessary and appropriate because if Ms. McNeill is not enjoined, the United States will likely suffer irreparable injury by erroneously providing tax refunds to persons who are not entitled to receive them, and by taxpayers who are not reporting and paying the correct amount

of taxes as a result of Ms. McNeill's actions as a tax return preparer and manager of a tax preparation business.

176.     Unless Ms. McNeill is enjoined, the IRS will have to devote substantial time and resources to identifying and locating her customers, and then examine her customers' tax returns and liabilities.  Pursuing all of Ms. McNeill's customers may be impossible given the IRS's limited resources.

177.     Permanently enjoining Ms. McNeill from acting as a federal income tax return preparer is in the public interest because a permanent injunction will stop her illegal conduct and the harm it causes the United States.

## DEFENDANT TIFANY LADEVA ROGERS

178.     The United States incorporates by reference the allegations made in paragraphs 1 through 177, above, as if fully set forth herein.

179.     Ms. Rogers was an income tax return preparer within the meaning of 26 U.S.C. § 7701(a)(36), and has prepared other people's tax returns for compensation.

180.     Ms. Rogers was employed by NBT as a return preparer and manager from 2007 through 2011.

181.     As a return preparer and manager, Ms. Rogers prepared hundreds of false tax returns for numerous NBT customers.  These tax returns claimed larger tax refunds for the NBT customers than the customers were entitled to, by reporting false deductions, false exemptions, and false credits to which the customers were not entitled.

37

182. As a direct result of Ms. Rogers's willful and pervasive return preparation scheme, her customers have filed federal income tax returns that understate their federal income tax liabilities and claim income tax refunds to which they were not entitled.

183. Upon receipt of the inflated refund, Ms. Rogers claimed large fees from the NBT customers, thus directly benefitting from and sharing in the moneys wrongfully obtained from the government.

184. In her plea agreement in her criminal case, Ms. Rogers admitted participation in this scheme and was required to make restitution of $107,299.

185. Through NBT, a PTIN assigned to Ms. Rogers prepared approximately 205 returns for the 2010 through 2012 tax years (the 2009 through 2011 filing seasons).

186. For example, on or about February 9, 2009, Ms. Rogers willfully assisted in preparing a 2008 income tax return for an NBT customer. The return that Ms. Rogers helped prepare reported that the customer was entitled to Schedule C income of $2,500, to claim a tax credit based on educational expenses of $2,400, to claim deductions for medical and dental expense of $7,050, to claim schedule C depreciation of $1,460 and to claim tax credits for off-highway use of 18,000 gallons of fuel. Ms. Rogers knew that these items were completely false at the time that the return was filed, in violation of 26 U.S.C. §7206(2).

187. Similarly, on or about January 12, 2010, Ms. Rogers willfully assisted in preparing a 2009 income tax return for an NBT customer. The return that Ms. Rogers helped prepare reported that the customer was entitled to claim a tax credit based on

education expenses of $4,000 and to claim an earned income tax credit based in part on unreported tips of $4,500. Ms. Rogers knew that both of these claims were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

188. Similarly, on or about on or about February 1, 2010, Ms. Rogers willfully assisted in preparing a 2009 income tax return for an NBT customer. The return that Ms. Rogers helped prepare reported that the customer was entitled to claim a tax credit based on education expenses of $3,518, to claim business income of $6,190, and to claim an exemption for a dependent. Ms. Rogers knew that these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

189. Similarly, on or about February 3, 2010, Ms. Rogers willfully assisted in preparing a 2009 income tax return for an NBT customer. The return that Ms. Rogers helped prepare reported that the customer was entitled to claim deductions for medical and dental expenses of $6,500, to claim Schedule C income of $2,500, to claim Schedule C depreciation of $1,500, to claim Schedule C deductions for repairs and maintenance in the amount of $2,600, to claim a Schedule C deduction for supplies of $1,000, and to claim a tax credit based on educational expenses of $7,514. Ms. Rogers knew that these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

190. Similarly, on or about February 8, 2010, Ms. Rogers willfully assisted in preparing a 2009 income tax return for an NBT customer. The return that Ms. Rogers helped prepare reported that the customer was entitled to claim a tax credit based on education expenses of $7,678, and to claim an Earned Income Tax Credit based in part

39

on unreported tips of $5,367.  Ms. Rogers knew that both of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

191.    Ms. Rogers prepared tax returns and other documents for customers that were intended to be used (and were used) in connection with material matters arising under the internal revenue laws.

192.    Because Ms. Rogers knew that these returns and other documents would result in understatements of her customers' tax liabilities, she engaged in conduct subject to penalty under 26 U.S.C. § 6701.

193.    Ms. Rogers therefore should be permanently enjoined under 26 U.S.C. § 7408 from engaging in conduct subject to penalty under 26 U.S.C. § 6701.

194.    Ms. Rogers has continually and repeatedly prepared and submitted federal tax returns that contain unrealistic and frivolous positions, and that willfully attempted to understate his customers' correct tax liabilities, and has thus engaged in conduct subject to penalty under 26 U.S.C. § 6694.

195.    Ms. Rogers has continually and repeatedly failed to exercise diligence in determining her customers' eligibility for the earned income credit, thereby subjecting her to penalty under 26 U.S.C. § 6695(g).

196.    Accordingly, Ms. Rogers should be permanently enjoined from acting as a tax return preparer under 26 U.S.C. § 7407.

197.    Ms. Rogers has engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws, and is likely to continue to engage in such conduct unless she is enjoined.  On information and belief, she

40

continued to prepare and file false tax returns that contain fabricated and unsubstantiated deductions and expenses even after he became aware that NBT was under investigation for preparing such returns.

198.     Recurrence of similar wrongful conduct is probable given the substantial financial harm already caused by Ms. Rogers; Ms. Rogers's prior willfulness, the recurrent nature of her conduct over a period of years, and the absence of any assurances that she will not commit future violations if she were to return to the tax return preparation business.

199.     A permanent injunction under 26 U.S.C. § 7402(a) is necessary and appropriate because if Ms. Rogers is not enjoined, the United States will likely suffer irreparable injury by erroneously providing tax refunds to persons who are not entitled to receive them, and by taxpayers who are not reporting and paying the correct amount of taxes as a result of Ms. Rogers's actions as a tax return preparer and manager of a tax preparation business.

200.     Unless Ms. Rogers is enjoined, the IRS will have to devote substantial time and resources to identifying and locating her customers, and then examine her customers' tax returns and liabilities. Pursuing all of Ms. Rogers's customers may be impossible given the IRS's limited resources.

201.     Permanently enjoining Ms. Rogers from acting as a federal income tax return preparer is in the public interest because a permanent injunction will stop her illegal conduct and the harm it causes the United States.

## DEFENDANT TASHA RENEE SMITH

202. The United States incorporates by reference the allegations made in paragraphs 1 through 201, above, as if fully set forth herein.

203. Ms. Smith was employed by NBT as a tax preparer at an NTB branch in Durham, North Carolina during part of the 2005 tax filing season, the 2006 tax filing season, and part of the 2007 tax filing season.

204. While at NBT, Ms. Smith learned how to prepare tax returns in a manner that improperly inflated the refunds NBT's customers received. Common techniques of falsification included (i) the use of refundable tax credits, specifically, the Earned Income Tax Credit (EITC) and various education credits, as well (ii) the addition of fictitious income, typically adding bogus Schedule C businesses or fictitious tip income or "household help" income.

205. During her second and third seasons preparing returns at NBT, Ms. Smith made extensive efforts to solicit and purchase the names, dates of birth, and Social Security Numbers of individuals in the community. Ms. Smith used the identities she purchased in this fashion as false dependents on returns she prepared at NBT later that tax year.

206. When Ms. Smith sold false dependent information to a customer, she instructed the customer to write down the dependent's information in the customer's file and intake paperwork. This was intended to provide Ms. Smith with deniability in the event of an audit because it created the false appearance that the taxpayer had

42

provided the false dependent's information to Ms. Smith, when in fact, the reverse was true.

207.     During the 2008 tax filing season, Ms. Smith, along with two other individuals, opened another tax return preparation business, Tax Wizards, with branches in Durham and Roxboro, North Carolina.  Ms. Smith owned and operated the business, and hired her own return preparers.  Ms. Smith also prepared a handful of returns at Tax Wizards, particularly at the Roxboro branch.

208.     Ms. Smith encouraged return preparers she hired to keep any falsifications on tax returns they prepared modest, in the $1,200 to $1,500 range, to avoid IRS scrutiny. Tax Wizards also used common commercially available software for return preparation, and Ms. Smith had the ability through this software to access and view all returns prepared by her employees at Tax Wizards.  Ms. Smith knew that return preparers she employed at Tax Wizards were falsifying returns for customers, both because she had cautioned the return preparers to keep any falsifications modest, and because she witnessed some falsifications occur on the premises.

209.     Ms. Smith required her Tax Wizards employees to sign statements stating that they were independent contractors and required customers to disclaim any liability for fraud or false statements on their returns.

210.     In 2010, Ms. Smith and another individual opened another tax return preparation business, Keystone Tax Services, in Durham, North Carolina.

211.     Like Tax Wizards, Keystone Tax Service also became a hotbed of tax falsification. Similarly, Ms. Smith required her Keystone Tax Service employees to sign

43

statements stating that they were independent contractors and required customers to disclaim any liability for fraud or false statements on their returns.

212.    Ms. Smith became aware that return preparers at her businesses were falsifying returns by creating fictitious W-2s issued by non-existent businesses.  The falsification was so rampant and involved so much money that Ms. Smith shut down both Tax Wizards and Keystone Tax Service circa April 2011 to avoid IRS detection.

213.    From January to April 2012 (tax year 2011 filing season), Ms. Smith and two other individuals opened a business called Tax Solutions.  Tax Solutions had four branches throughout North Carolina, specifically, in Roxboro, Durham, Burlington, and Kinston.

214.    Ms. Smith was responsible for hiring managers for the various Tax Solutions branches, and she hired two managers who had worked for her at Tax Wizards and/or Keystone Tax Service, one of whom she knew to be complicit in the fraudulent practices there.

215.    Like NBT, Tax Wizards, and Keystone Tax Services, tax preparers at Tax Solutions also falsified tax returns for their customers.

216.    As a direct result of Ms. Smith's willful and pervasive return preparation scheme, her customers have filed federal income tax returns that understate their federal income tax liabilities and claim income tax refunds to which they were not entitled.  In her plea agreement in her criminal case, Ms. Smith admitted participation in this scheme and was required to make restitution of $375,758.

44

217.     Ms. Smith is an income tax return preparer within the meaning of 26 U.S.C. § 7701(a)(36).

218.     Ms. Smith prepared tax returns and other documents for customers that were intended to be used (and were used) in connection with material matters arising under the internal revenue laws.

219.     Because Ms. Smith knew that these returns and other documents would result in understatements of her customers' tax liabilities, she engaged in conduct subject to penalty under Section 6701.

220.     Ms. Smith therefore should be enjoined under 26 U.S.C. § 7408 from engaging in conduct subject to penalty under 26 U.S.C. § 6701.

221.     Ms. Smith has continually and repeatedly prepared and submitted federal tax returns that contain unrealistic and frivolous positions, and that willfully attempted to understate his customers' correct tax liabilities, and has thus engaged in conduct subject to penalty under 26 U.S.C. § 6694.

222.     As a tax return preparer, Ms. Smith has continually and repeatedly received direct deposit payments made in respect of an internal revenue tax which were issued to a taxpayer other than Ms. Smith, thereby subjecting her to penalty under 26 U.S.C. § 6695(f).

223.     Ms. Smith has continually and repeatedly failed to exercise diligence in determining her customers' eligibility for the earned income credit, thereby subjecting her to penalty under 26 U.S.C. § 6695(g).

224.    Ms. Smith has engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws, and is likely to continue to engage in such conduct unless she is enjoined. She continued to prepare and file false tax returns that contain fabricated and unsubstantiated deductions and expenses even after he became aware that she was under investigation for preparing such returns.

225.    Ms. Smith's conduct is causing irreparable injury to the United States and an injunction under 26 U.S.C. § 7402(a) is necessary and appropriate.  If Ms. Smith is not enjoined, the United States will suffer irreparable injury by erroneously providing tax refunds to persons who are not entitled to receive them, and by taxpayers who are not reporting and paying the correct amount of taxes as a result of Ms. Smith's actions as a tax return preparer.

226.    Unless Tasha Smith is enjoined, the IRS will have to devote substantial time and resources to identifying and locating his customers, and then examine his customers' tax returns and liabilities. Pursuing all of Ms. Smith's customers may be impossible given the IRS's limited resources.

227.    Enjoining Ms. Smith from acting as a federal income tax return preparer is in the public interest because an injunction will stop her illegal conduct and the harm it causes the United States.

### DEFENDANT DAWN KIRBY WILLIAMS

228.    The United States incorporates by reference the allegations made in paragraphs 1 through 227, above, as if fully set forth herein.

46

229. Ms. Williams was an income tax return preparer within the meaning of 26 U.S.C. § 7701(a)(36), and has prepared other people's tax returns for compensation.

230. Ms. Williams was employed by NBT as a return preparer from 2009 through 2011.

231. As a return preparer and manager, Ms. Williams prepared hundreds of false tax returns for numerous NBT customers. These tax returns claimed larger tax refunds for the NBT customers than the customers were entitled to by reporting false deductions, false exemptions, and false credits to which the customers were not entitled.

232. As a direct result of Ms. Williams's willful and pervasive return preparation scheme, her customers have filed federal income tax returns that understate their federal income tax liabilities and claim income tax refunds to which they were not entitled.

233. Upon receipt of the inflated refund, Ms. Williams claimed large fees from the NBT customers, thus directly benefitting from and sharing in the moneys wrongfully obtained from the government.

234. In her plea agreement in her criminal case, Ms. Williams admitted participation in this scheme and was required to make restitution of $110,914.

235. For example, on or about February 22, 2010, Ms. Williams willfully assisted in preparing a 2009 income tax return for an NBT customer. The return that Ms. Williams helped prepare reported that the customer was entitled to claim a tax credit based on educational expenses in the amount of $5,025 and to claim an exemption

47

for a dependent.  Ms. Williams knew that both of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

236.    Similarly, on or about January 15, 2010, Ms. Williams willfully assisted in preparing a 2009 income tax return for an NBT customer.  The return that Ms. Williams helped prepare reported that the customer was entitled to claim an Earned Income Tax credit based in part on unreported tip income in the amount of $3,300, to claim a tax credit based on educational expenses of $4,000, and to claim Schedule C deductions for meals and entertainment of $1,250.  Ms. Williams knew that these claims were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

237.    Similarly, on or about on or about January 21, 2010, Ms. Williams willfully assisted in preparing a 2009 income tax return for an NBT customer.  The return that Ms. Williams helped prepare reported that the customer was entitled to claim a tax credit based on education expenses of $7,412, and to deduct business losses in the amount of $9,062.  Ms. Williams knew that these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

238.    Similarly, on or about January 25, 2011, Ms. Williams willfully assisted in preparing a 2010 income tax return for an NBT customer.  The return that Ms. Williams helped prepare reported that the customer was entitled to claim  a tax credit based on educational expenses of $6,360, and to claim an exemption for a dependent.  Ms. Williams knew that these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

239. Similarly, on or about January 29, 2011, Ms. Williams willfully assisted in preparing a 2010 income tax return for an NBT customer. The return that Ms. Williams helped prepare reported that the customer was entitled to claim a tax credit based on education expenses of $6,575, and to claim an Earned Income Tax Credit based in part on unreported tips of $4,160. Ms. Williams knew that both of these items were completely false at the time that the return was filed, in violation of 26 U.S.C. § 7206(2).

240. Ms. Williams prepared tax returns and other documents for customers that were intended to be used (and were used) in connection with material matters arising under the internal revenue laws.

241. Because Ms. Williams knew that these returns and other documents would result in understatements of her customers' tax liabilities, she engaged in conduct subject to penalty under 26 U.S.C. § 6701.

242. Ms. Williams therefore should be permanently enjoined under 26 U.S.C. § 7408 from engaging in conduct subject to penalty under 26 U.S.C. § 6701.

243. Ms. Williams has continually and repeatedly prepared and submitted federal tax returns that contain unrealistic and frivolous positions, and that willfully attempted to understate his customers' correct tax liabilities, and has thus engaged in conduct subject to penalty under 26 U.S.C. § 6694.

244. Ms. Williams has continually and repeatedly failed to exercise diligence in determining her customers' eligibility for the earned income credit, thereby subjecting her to penalty under 26 U.S.C. § 6695(g).

49

245.    Accordingly, Ms. Williams should be permanently enjoined from acting as a tax return preparer under 26 U.S.C. § 7407.

246.    Ms. Williams has engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws, and is likely to continue to engage in such conduct unless she is enjoined.  On information and belief, she continued to prepare and file false tax returns that contain fabricated and unsubstantiated deductions and expenses even after he became aware that NBT was under investigation for preparing such returns.

247.    Recurrence of similar wrongful conduct is probable given the substantial financial harm already caused by Ms. Williams; Ms. Williams's prior willfulness, the recurrent nature of her conduct over a period of years, and the absence of any assurances that she will not commit future violations if she were to return to the tax return preparation business.

248.    A permanent injunction under 26 U.S.C. § 7402(a) is necessary and appropriate because if Ms. Williams is not enjoined, the United States will likely suffer irreparable injury by erroneously providing tax refunds to persons who are not entitled to receive them, and by taxpayers who are not reporting and paying the correct amount of taxes as a result of Ms. Williams's actions as a tax return preparer and manager of a tax preparation business.

249.    Unless Ms. Williams is enjoined, the IRS will have to devote substantial time and resources to identifying and locating her customers, and then examine her

customers' tax returns and liabilities. Pursuing all of Ms. Williams's customers may be impossible given the IRS's limited resources.

250. Permanently enjoining Ms. Williams from acting as a federal income tax return preparer is in the public interest because a permanent injunction will stop her illegal conduct and the harm it causes the United States.

WHEREFORE, the plaintiff, the United States of America, respectfully prays as follows:

A. That the Court find that the defendants have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, and that injunctive relief is appropriate under 26 U.S.C. § 7407 to prohibit the defendants from acting as tax return preparers because a permanent injunction limited to prohibiting such conduct would not be sufficient to prevent their interference with the proper administration of the internal revenue laws;

B. That the Court find that the defendants have engaged in conduct subject to penalty under 26 U.S.C. § 6701, and that injunctive relief is appropriate under 26 U.S.C. § 7408 to prevent them from engaging in further such conduct;

C. That the Court find that the defendants have engaged in conduct that substantially interferes with the proper administration of the internal revenue laws, and that injunctive relief against them is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a).

D. That the Court, pursuant to 26 U.S.C. §§ 7402 and 7407, enter a permanent injunction barring each of the defendants from acting as a federal income tax

51

return preparer and from preparing or filing returns for others, and from

representing customers before the IRS; AND

E. That the Court authorize the United States to engage in post-judgment

discovery to monitor compliance with the terms of any injunction entered

against the defendants.

Date: May 11, 2016

THOMAS G. WALKER
United States Attorney

CAROLINE D. CIRAOLO
Acting Assistant Attorney General

/s/ *Stephanie A.Sasarak*
STEPHANIE A. SASARAK
RICHARD J. HAGERMAN
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
202-307-2089 (v)
202-616-9832 (v)
202-514-6866 (f)
Stephanie.A.Sasarak@usdoj.gov
Richard.J.Hagerman@usdoj.gov